SKINNER v. WHITE and others.

An association for carrying on a manufacture, having failed while their buildings were in progress, one of the partners and cestui que trusts, made advances without the consent of the others, to preserve the buildings, which were afterwards sold for common benefit.

Held, that he could not be credited for these allowances, in taking the accounts of the concern.

THE history of this cause previous to this time, will be found in 13 John. 307. ; 2 John. ch. 526. ; 17 John. 365. ; 5 John. ch. 351. ; and 19 John. 513. 572.

1824.<br>March 26.<br><em>Voluntary</em><br><em>courtesy.</em>

In the last cited page, is the decree of the court of errors in pursuance of and according to which, an order of reference was afterwards made in the court of chancery ; and the parties having been heard before master Wendell, he on the third of September 1823, made a report, to which an exception was taken by the executors of Ira Hall, one of the defendants, which now came on to be argued.

The master reported, that the sum expended by the partners in and about the manufactory, previous to August 1815, with interest, amounted to - - - - $4411 06

And the damages formerly reported as due to White, Taylor and White, being - - 5958 37

making an aggregate of - - - $10,369 43 of which sum he made and stated an apportionment among the parties, by which it appeared, that Ira Hall was the owner of five shares and had paid in his life an amount of $1723, 44, and that the contributory share now payable by his estate, was stated at $1156, 96.

The report stated, that the property of the company consisted of buildings and lands. It then further stated, " that in the progress of the examination of the several matters referred in this cause, by the order of reference, the counsel for

the defendants, the representatives of Ira Hall deceased, offered to give evidence of, and show the payment of sundry sums of money laid out and expended by him, for the use and benefit of the said company, subsequent to the first day of August 1815. To this evidence the counsel for the appellants objected, as it appeared by the pleadings and the testimony taken in chief, that the company was broken up and the factory abandoned, on or before the first day of August 1815; unless it should also be shown that such money had been expended in pursuance of a resolution of the directors of the said company, or by the consent of the said parties; which testimony was not offered. The objection therefore, was sustained and the testimony which was offered, rejected."

And the master reported the testimony of two witnesses, taken before him, which so far as the present question is concerned, was to the following effect: " that Nathan Law was sworn as a witness, who testified that he contracted with Reuben Skinner, one of the directors of the said company, in the spring of the year 1815, to do the stone mason work in building the factory for the Granville Cotton Manufacturing Company, and was to have and receive five shillings for laying every perch of the said stone work; that he afterwards took Alfred Bulkley into partnership, to do such work; that he performed the greater part of such work, some time before the first day of August 1815, when he quit the work upon the information given him by Abner P. Hitchcock, one of the company, that they would not go on with the building; that he then settled with said Reuben Skinner, for all the labor he had done under the contract made with him for building the stone work of the said factory; that Ira Hall after the said first day of August, applied to the witness to go on and finish the work, under his said contract, which witness refused to do, because the company had stopped; that at the request of the said Ira Hall, and after the witness had informed him that he should look to him for the payment of his work, he agreed to go on and do the work, at the same rate for which he had agreed to work for Skinner." That Alfred Bulkley was also sworn as a witness, and testified, " that he wrought at the said factory with Nathan Law, before the first day of August 1815,

in laying the walls thereof, at the rate of five shillings per perch, under a contract with Reuben Skinner, and that he paid the witness for all the work done by him previous to that day ; that in consequence of information received from the said Reuben Skinner and other partners in the said company, that the company would not proceed in building and completing the said factory, the witness with Nathan Law covered the walls, then in an unfinished state, and quit the work ; that Ira Hall did afterwards in the same year, apply to the witness to go on with the work and would pay him for his labor at the same rate he was to receive under the contract made with Reuben Skinner ; that the witness did in consequence of his agreement made with Ira Hall, go to work, the said Nathan Law aiding in completing the walls of the said factory, and received a compensation for his labor, from the said Ira Hall ; that the receipt shewn to the witness given by him for Ira Hall's note of one hundred dollars, dated the first day of January 1816, was given for work and labor done by him at the factory, at the request of Ira Hall, after the said first day of August 1815." The witness farther testified, " that the walls of the said building would have been injured, if the roof had not been put upon it ; and that the witness has no recollection, that he has at any time since the said first day of August 1815, heard Reuben Skinner speak any thing upon the subject of the work, done by Nathan Law and witness, on the said factory, for the said Ira Hall.

The exception now taken to the report, was to the disallowance by the master, of the claim of the executors of Ira Hall, for advances made by him for work upon the building of the company, after the first of August 1815. It was admitted, that the building had since been sold for the benefit of the company.

MR. S. M. HOPKINS for the executors of Hall.

This company was broken up, at a moment when a large part of their funds was invested in an uncovered building. That building belonged to them as a company, as a quasi corporation, and for the special object of a manufactory. On the dissolution of the company it was in effect, derelict, and the building exposed to ruin. The eventual cestui que trusts

1824.

SKINNER
v.
WHITE.

were indeed in esse, but they were cestui que trusts of the future proceeds of a ruined concern. For the purpose of present conservation of the property, there was no one who would act, and none but Hall who could advance funds. The funds advanced by Hall have saved it, and the company have now reaped the benefit of those advances.

Our claim to an allowance for these advances, rests on the strongest natural equity, and the opposition to it is an act of great injustice.

This is not the ordinary case of a voluntary courtesy. It is a universal principle of all law, that he who in the absence of the owner, interferes to save his property from ruin, and does save it, is entitled to just remuneration. In the present state of society, these cases can not be very common, but they exist : salvage in the maritime law, is one ; estrays are another. But in sense and reason, there is nothing peculiar in the case of a ship. Suppose a carrier to save a lost package of goods, or one person in the absence of the owner, to save his goods from fire or inundation ; is not the owner bound to compensate him ? or, can the owner maintain trespass against him, who performs the friendly act ?

To the action of trespass, I should plead a license ; and in support of the assumpsit, I would aver a special instance and request. There is no judge who would not direct a jury to presume those facts. There is a decision of our supreme court in conformity to this principle, in a case where compensation was adjudged for saving stacks of hay from fire.

In the civil law, this doctrine was familiar, under the title, " De negotiis gestis."; III Inst. tit. 28. ; II Code. tit. 19.; Domat B. 2. tit. 4. sec. 1. 2.; Digest. lib. III. tit. v. 1. 2, &c. And the common law is not wholly without examples to the same purpose ; as burying a deceased wife or child, in the absence of a relative. T. Ray. 260. ; Dyer 272. a. note b. ; H. Blk. 90. 93. ; or an apothecary administering to a sick child. Bull. N. P. 147. ; 2 Lev. 111. So if the consideration is a continuing one, assumpsit will lie. Cro. Eliz. 94. 138. ; 1 Lev. 102. ; 2 Bulst. 73. ; 1 Roll. Ab. 12. C. 5.

Here the finishing of the building for common benefit, is a continuing consideration.

But if this was a partnership, then we are entitled to all expenses from the fund.

MR. BUEL for White, Taylor and White.

This is a mere question of right. The hardship of the case is not for consideration. All parties are losers, and my clients with others.

By the last decree in error, it has been established that the fault of non performance lay, not upon Skinner, but upon the stockholders, who all refused to pay their shares.

The president and directors, were the proper agents for the management of the property. These expenses were incurred for the building, not only without the assent of the company, but against the expressed opinion of all the stockholders; and against the opinion of those, who were the legal managers of the concern. The case is within the principle of Livingston v. Lynch, 4 John. ch. 573.

The doctrine contended for on the other side, is alarming. It would lead to the consequence that any one member of such an association may carry on business, incur responsibilities, and waste the common fund.

In effect, these stockholders are tenants in common. But such tenants can not compel contribution from their co-tenants, for repairs or improvements. No case to that effect, has been, nor, it is presumed, can be cited.

The rules cited from the civil law, go expressly upon the ground, that the magister rei is absent. So also, do the common law cases of the parent, &c., in instances of sickness or burial. But what if the parent, owner, &c., had been present? Here the other owners were all present, and not only so but dissenting from the measures taken by Hall.

THE CHANCELLOR. Though the services and expenses of Ira Hall, after the first of August 1815, tended to preserve the building and enhance its value, yet Hall in these acts proceeded without authority from the company or his associates, after the enterprise had been abandoned by all the other partners, and when they had determined to make no farther advance and to incur no farther expense. There was not only a want of authority in Hall to charge his associates, and a want

1824.          of assent on their part, but it also appears, that Hall acted,
               with their known dissent from his proceedings. In these cir-
SKINNER        cumstances, Hall could not charge his associates, with expen-
   v.
WHITE.         ses incurred against their will. This exception is disallowed.